Case number 22-1166, East Texas Electric Cooperative, Inc. et al. petitioners versus Federal Energy Regulatory Commission. Mr. Rose for the petitioners, Mr. Kennedy for the respondent, Mr. Kaiser for the respondent intervener. May it please the Court, the four issues before this Court are in the Arbitrary and Capricious FERC Approval of APUS Manipulation for Transforming a Transmission Plan. Issue 1 is Procedural. Remaining issues are Subsidized. Issue 1, Challenge Period. That breaks down into two issues. What does the Tariff Protocol Section 5B say about backward error? And 2, what does the precedent say about backward error? Let's turn to the tariff. Can I ask you a question about that before you proceed? Even if there were some long-standing practice of backwards error correction, do you agree that that could be superseded by the terms of the protocol? The terms of the protocol has to itself be just and reasonable. Now, I appreciate that this is not contract. This is a tariff protocol. And tariff protocols are judged on whether they are just and reasonable, not on whether parties agree to it. So, but you think that this case is determined by the protocol, Section 5D, and if Section 5D were contrary to a long-standing practice, if it chose to override a long-standing practice of backwards error correction, it could do that, correct? It can do that. So, do we even need to think about what the long-standing practice is, or do we just need to look at Section 5D and what it means? Well, the long-standing practice informs the court as to how it should interpret that tariff provision. I see. But, on the other hand, you have not made an argument, and I don't think you could argue, that enforcing time limits on this tariff process would be unlawful, would violate the Federal Power Act. Your only argument is based on what FERC has approved in other cases. That's correct. Which sort of puts an exclamation point on Judge Pan's question. And I'll explain exactly why that precedent FERC had is so important in interpreting tariff. The first issue is, does the tariff protocol unambiguously bar backward error correction? Well, it's actually whether FERC could reasonably construe the protocol to do that. Well, you have to get past whether the language is ambiguous or not. If it is ambiguous, then you go to whether FERC's interpretation is reasonable. So, if you're within the range of reasonable disagreement, FERC wins? No. It's not whatever FERC says. You don't think FERC has interpretive authority over tariff provisions? They have interpretive authority, but it has to be reasonable. If we're in the zone of reasonable disagreement, that is correct. That is correct, and that kind of interpretation depends on looking at text, structure, purpose, and history of the protocol. According to the issue of, is the protocol itself unambiguous, looking at the AP U.S. Protocol Section 5D, it speaks to challenges to current annual updates, future annual updates, and doesn't say anything at all about previous annual updates. I'm sorry, but weren't the previous updates subject to Section 5D? Our claim that Section 5D says nothing at all about previous annual updates. There is language. A given annual update? Yes. Which would seem to cover 2018 as well as 2019. No. It covers the annual update that the facility has filed. It doesn't say anything about previous annual updates. But in 2018, Section 5D applied. Yes. It did. So under that reading, then, you had to bring challenges to 2018 in 2018. No. The language itself talks about the language. We're talking here all sections of Section 5D. It is talking about you have an annual update. You make a challenge to that annual update. That does not prevent you from making other challenges that you missed. But you should have made it into, under this provision, shouldn't you have made challenges to 2018 in 2018? No. That's not the right way to read the language. Why not? Because this applied in 2018. So you had a chance to challenge 2018 errors in 2018. Let me explain. There is language that would do that. You can find that in the Average in Kansas Protocol, which Burke said was informative. It is informative, but not for the reason we're saying. The Average in Kansas Protocol. Let's just talk about this one. This does seem awfully clear. It talks about a given annual update, the indefinite article A, and the adjective given. That doesn't mean the one and only annual update that is the most recent one under litigation. A annual update means there's going to be a whole series of annual updates. You know that in advance. And A given annual update would seem to refer to all of them. No. You want to get the series of annual updates. You'd use language like each annual update, which is what the Average in Kansas Protocol said. But that's not here. That language is simply not here. So if the court believes that there is a logical possibility of interpreting this language to not address backwards error correction, then at the very least, the language is ambiguous. If the language is ambiguous, then this court looks to see if Burke's tariff interpretation is just reasonable. I'm sorry, we looked to... I didn't hear you. Then we looked to see whether Burke's tariff interpretation satisfies the arbitrary and capricious standard. I'm sorry, counsel. I really want to understand your argument. So the language says, failure to pursue an issue through a preliminary challenge or to lodge a formal challenge regarding any issue as to a given annual update shall bar pursuit of such issue with respect to that annual update. Correct. I don't understand your argument as to why you didn't have to bring up a challenge to the 2018 tariff in 2018 under this provision. In 2019, that annual update was the 2019 annual update. I understand that, but this also applied in 2018. So your chance to do that was in 2018. Only if you make that assumption. But that's not in the language itself. How is that an assumption? Because you're assuming that that annual update goes backwards. Where is that language? It says any issue as to a given annual update shall bar pursuit of such issue with respect to that annual update. Yes. So in 2018, any issue as to that annual update in 2018 should have been raised then. Failure to pursue it in 2018 shall bar pursuit of such issue. No. It doesn't apply. Why? Because you're dealing with, and the language is clear about this, you are dealing with a given annual update and then its implications for the next annual update. That's for 2019, but I'm saying you want to raise error correction from, for example, 2018. Yeah. But in 2018, 5D applied. Yes, it did. And for 2018, whatever challenges we made applied then. But you can always find errors later on and apply it backwards to 2018. I don't understand how the language allows that. Because it does not address backward error correction. It simply doesn't say that. There is language that can address backward error correction, but they didn't use that. Well, how does Section 205 and 206 of the Federal Power Act play into this then? Well, let me explain it this way. With stated rates, the utility must wait for the commission's decision before it can change its rate. The cost of service formula rate, utility changes its rate, then the commission takes a backwards look to make sure that the final rate tracks the actual costs of the utility. There's no good reason to limit backward error correction. That's a Section 205 type of proceeding when you have a formal challenge. Why not? I mean, there are strong anti-retroactivity principles built into the statute. That would be true. It's a five-month period built into 205. That would be true for the formula rate, which is the formula itself, which is the rate. But it is not true for the data inputs. Those are never approved by FERC as final. You can always bring, and FERC will admit it, a 206 case with backwards error correction. And 206 has anti-retroactivity principles built into a refund period. Okay. Take a look at it. Any process that's sort of in the gray area between 205 and 206, you can go back to the beginning of time when under either prong of the statute you can only go back so far? Well, it's not so odd, even according to FERC. Since the days of fuel adjustment charges, FERC has explicitly allowed, case after case, error correction and prudence challenges that go back to when the error first appeared and at whatever time the error or imprudence was discovered. Can you explain, maybe it's just my lack of familiarity with FERC, but why is this claim properly brought under 205 instead of 206? Because it seems to me to be a procedural overarching thing and not about specific things. There is a formal challenge process to a rate, and the formal challenge process is 205-like because the utility has the burden of proof to justify this particular cost of service, its data input. But the claim seems to be that there's a procedure going on about backwards error correction that you think is not fair and just. That is correct. Shouldn't that be brought under 206? No, that would be a challenge to the formula. You're challenging the right under the protocols themselves to make a backward error correction. Okay. So if we interpret the protocols to be unambiguous and to favor FERC's interpretation, if you wanted to challenge that, then you could bring it under 206? That's correct. Okay. I appreciate, however, that FERC's position, if they're right on Section 205, on Section 5D, that would apply to both 205 formal rate challenges and to 206 challenges. Oh. Yes. Why? For data input. Because it's barring backward error correction, which is what FERC would argue. It bars backward error correction for both kinds of challenges, that you have this extensive FERC precedent, but, yes, you can make backward error challenges under 206. You just wipe that away. So is it correct that all the precedents would be relevant to a challenge under 206 to say this is just not fair and just the way of doing this? Yes. Okay. But they're not really relevant under this 205 challenge because we're just interpreting what 5D means. If you decide that Section 5D is unambiguous and barring backward error correction, then what is relevant is only that the 206 challenges seem to have gone away as well. And that's just not correct. So this would be a precedent that would govern a 206 challenge? Is that what you're saying? Why? Yes. This 5D protocol language is used throughout the industry based on the old MISO protocols, the big FERC inquiry into the justice and reasonableness of how you do transmission formula. But that doesn't mean that you can't challenge it under 206. We could challenge the formula 206, but the data input we could never challenge again. But it wouldn't be a data input... Even under a 206. I'm sorry. I just want to make sure I understand this. If we think that 5D language is unambiguous, in this case under 205, my question was, can you then raise a challenge to this procedure under 206 by saying it's not fair, Jess? And I thought your answer was yes, but then you said that your 206 challenge would be governed by our reasoning in this 205 challenge, and I don't understand why. I'm distinguishing between a 206 challenge, the data input, errors in data input. But your 206 challenge would not be to data inputs. It would be on the procedure of backwards error correction being limited. That's the second. That's the other aspect. And that would not be governed by the 205 decision we make in this case. Correct. Okay. Thank you. 206. FERC says parties have a degree of ability to limit backward-looking challenges under the tariff protocols, and they say that is okay if and only if 206 challenges are unlimited. Correct? The 206 challenge is to formulate. You can always formulate itself, and then you can always bring a challenge to the data inputs and get backward error correction for the data input. Successful challenges to the formula are perspective only. I thought challenges to the formula could be retroactive. That's the 206 challenge. No. If it's a challenge to the formula, and you win, that's perspective only. The data inputs are not part of the formula. They're just data input, and that you get backward error correction for. Okay. Yeah, but... That was not my understanding of 206. I thought the backward error correction... 205 and 206 both have within them challenges to rates and to classifications, practices, and regulations affecting such rates. My understanding is all of these protocols are implementing statutory language about classification, classifications affecting rates under 205. Yes. None of that addresses your ability to use 206 to challenge not only rates, but classifications affecting rates. I'm not sure what you mean by that. Are you talking about Section 205? Talking about, yeah, whatever we would say, whatever we would say in this case about the permissibility of this kind of time limit in the tariff protocol. The tariff protocol can require you to challenge the inputs year by year, correct? Yes. It specifically allows you to challenge each annual... Require you to do it year by year. Yes. They have to file it year by year. Yes. As a challenge to the classification affecting rates under Section 205. Yes. I guess I'm just not seeing why that bars you from invoking 206 to challenge the classification. If you read the language of FERC, though, that it applies to all through the bar, challenges applies to all previous annual updates, that knocks out a Section 206 challenge to the data input. And that's contrary to FERC precedent. But not if your 206 challenge is challenging the formula and the protocol as applied. So my understanding is, correct me if I'm wrong, you have challenged the application in this case, Section 5D, that protocol. If we decide that Section 5D is unambiguous and it means backwards error correction is allowed under Section 5D, you could go under 206 and say, I want to challenge the formula and the protocol, not the application of it, but what it is, and say it's not fair and just. And in that case, you could have a separate case that challenges not the application of it necessarily in Section 5D, where actually it is, not in this case, but generally speaking, the way we've interpreted is not fair and just, and so you want to overturn the protocol. And that would be under 206. And my understanding was that you could get backwards error correction under 206, because there are a lot of cases that seem to say that. But you're saying you couldn't get backwards error correction under 206? Because if in 206 you were able to get a holding that this provision, which we've held to be unambiguous, is not fair and just, you could then challenge the provision that way, and then you could get backwards error correction, because the formula, as it was written and as we've interpreted it, was not fair and just. Is that correct? The change to the formula that all proceeds as you describe it would be prospective only. It would, okay. And then we could start making backwards error correction arguments if we won that issue subsequently. Under 205? That's what we would win if we won on challenging the protocol. If you succeeded in challenging the protocol under 206, then you would file backwards error correction under 205 based on the new interpretation of the protocol? Yes. It would be 205 formula challenges. Okay, I see, because we would have held in that instance that you could backwards correct, because that was not fair and just. So you would then go under 205. I had the same question you did, and we found an opinion putting this stuff under 205, what's happening here. Thank you. Are there any more questions? Not on this issue.  We'll give you rebuttal. We'll hear from FERC. Good morning, Your Honors. Robert Kennedy on behalf of the Commission. Can you just walk us through the mechanics of this? I look at 205 and 206 to see what I see. You all seem to conceptualize this process for challenging inputs on the backward end of a formula rate tariff as its own thing. We've said it implements 205. Right. Feels like it's somewhere in the middle. I mean, you've heard the question, so help us out. Yeah, I was going to try and jump in and hopefully clear the waters. I think an initial question from you, Judge Pam, was sort of are we talking about whether this provision is just and reasonable? And the answer is no. That's been decided. Section 5D is part of the filed rate. So cases like Seminole, the First Circuit Boston Edison case, and Oklahoma Gas say the question in this case is just whether it applies and should it be enforced, not whether as a policy matter it makes sense. If they wanted to change that, they would say the formula rate protocols are just and reasonable. They would file a complaint under Section 206 and get the formula and the related protocols change going forward. In this case. And if they did that, they could get limited retrospective relief through the refund period and within the refund period? I mean, they couldn't go back as many years as they want. Well, to make things even more confusing. So just as to the protocol, that would be changed, and whatever they change it to, that would govern the next annual update and whatever it says about going back under this paraphrase process, that would govern. In the cases where there is a Section 206 complaint and the party wants to get relief, there's no similar protocol language, but just in the abstract, the party says this is 2023. I discovered an error. It's affected the rate since 2020. They bring a complaint under Section 206. What the commission has held there is that it can order retroactive relief. It's doing, and it's not bound by the time period in Section 206, the refund time period because it's using Section 309. And the court has found that. But again, that's not the case here. And the commission has made clear that this is a, you want to go that route. You can. We're talking here about the tariff based challenge procedure, and that has to be governed by what the procedures say. We believe the commission's interpretation of 5D is consistent with the language. We talked a lot about the express language. I always think this falls right in. It's consistent with precedent and also policy. With respect to precedent, in the reply brief, the petitioners note that this is a copy of the protocols that were eventually developed in the commission's Midwest ISO proceeding, which sort of kicked off an industry-wide review of these formula rate protocols. And in the reply, they say, oh, we relied on that. We adopted that precedent. Well, if you look at final compliance order in that case, it expressly addressed the sentence that we're fighting about here today. And there's a lot of Midwest ISO cases. So it's 150 FERC 61025. And if you look at paragraph 35, some of the customers say, hey, we think we need to qualify this language more. It could be read as affecting our section 206 rights. Paragraph 43, the transmission owners say, no, no. That language has nothing to do with section 206. That's separate. All we're saying with this language is you can't use challenge process to challenge prior rate years. Paragraph 50, the commission accepts the language. It says section 206 is a separate thing. What this language is doing is saying that interested parties can only use this challenge process for the current rate year. So the commission's interpretation of section 5D is consistent with that. And it's also consistent with policy. You know, it put in place this robust protocol process to impose transparency obligations on the transmission owners, discovery obligations. There's a robust exchange of information. But it also wants the customers to be engaged. And the limitation in section 5D encourages that and also furthers the goal of rate certainty. But it does so without affecting their ability, if they want, to pursue input errors going back in time. Through 206. Correct. Correct. I'm happy to talk about any of the other issues if you have questions about the coal or the tax. Let me ask you, I had thought on this first question, I had thought there were two parts to the question. One is what does the tariff mean? And then the second is did the agency adequately explain its decision to enforce the tariff limitation based on things it had said in other cases? And I'm just wondering, Judge Pan suggested, you know, maybe we don't even get to the second question if the tariff is unambiguous. If the tariff is unambiguous, it governs, unless it's inconsistent with statute. And there's no statutory claim here. Correct. So that's the end of it. Correct. All we need to do is construe the tariff unambiguously in your favor and then end of Q1. I think that's correct. In paragraph 13 of the hearing order and elsewhere, the commission has made clear that this isn't a statutory issue. It's just a tariff-based issue. We think the language compels the result here, but we also think if there is any ambiguity, the commission's certain reason. Just if I can for a moment, there's been a lot of talk about what the commission does in reviewing these formula rate filings and examining the inputs and what's permissible and what's not. Just to take a step back, you know, the uniform system of accounts has 50, 100-something accounts. It tells the utility, this is where you put all your expenses, this is where you categorize your revenue. Those are the inputs. The formula rate takes those inputs and says, okay, we're going to put these accounts in this bucket. That's what the utility can charge its customers. We're going to take these accounts from this bucket. That's what the utility has to cover itself. So in examining the formula rate updates each year, the commission will make sure that the right costs are in the right account. It will also consider prudence challenges. Did you prudently incur those costs? But what it won't do is rearrange the buckets and say, oh, you don't think this account should be in the customer bucket. That has to be done. That's changing the formula rate. That has to be done under section 206. Unless there's any questions from the court, I'll stop there. Thank you. Thank you, Your Honors. We appreciate it. I guess we have an intervener. Yes. Mr. Kaiser. And you might want to lower the podium. Okay. Please record it. Yes, Your Honor. William Kaiser on behalf of Intervener Electric Power Service Corporation supporting. So I want to take a minute because there was a lot of discussion about section 205 and 206, and I'm happy to answer questions on it. But I do, and I think our counsel did a really good job of kind of explaining the nuances of how they work in the formula rate process. But I think it's important to recognize that when the protocols, both the protocols and the formula rate itself, which is a template as our counsel was explaining, are submitted by the utility, they're done so under section 205 of the Federal Power Act. And FERC does review and approve both. Once they're established, only then, and once FERC finds them just or approves them, then you can challenge them under section 206. But once they're established, the only way you can challenge that, including section 5B, would be under a section 206. And during the establishment process, there's also an opportunity to, I guess, comment and oppose, for example, a section like 5D? Absolutely. Yes, there's an opportunity for participants to intervene and raise challenges. And the Commission will consider that and we'll issue an order kind of ruling on this. And that's what your friend was referring to in this MISO case where there was a challenge that this was going to affect people's rights under 206 and there was a clarification that no, this is just a 205. That is exactly right. And there's another case that we cite in our brief, which is one of our affiliates, American Electric Power East, where we have language in there limiting the ability to, not only similar language to here, where sort of limit the ability to go back after the annual update process is closed, we also have language in there limiting the ability to file a complaint under Section 206, trying to limit that. And the Commission struck that and distinguished between the two. They said you can keep the language where you're limiting challenges, but you cannot limit rights under Section 206 because it's a statutory right. What's the cite to that? It's American Electric Power East. Thank you. 124 for 6.306. Thank you. And then how does the 5C tariff addendum, that catch-all provision affect what you just mentioned with respect to going under 205 and then under 206? So what 5C does, 5C limits the types of challenges that can be raised during the formal challenge process because what happens is FERC approves the formula or the template. And as we've talked about, inputs each year are updated based on cost of the utility that flowed through that formula rate template. And 5C limits the types of things that you can raise during the challenge process. One of the things you can't do, as Councilman Ferk explained, is you can't challenge the template itself. You can challenge the input, but not the template. I was wondering whether this challenge falls under 205 or 206. I was thinking 206, and then I came across this opinion by Judge Williams, who was a great FERC expert. He said, seems more accurately akin to a continuance of the 205 proceeding because the annual update supplements the utility's initial 205 filing, which is simply a formula without the necessary inputs. Do you agree with that? Yes. Yes. I think that's the Northern Virginia Electric Co-op. So this proceeding before us is just the backend to culminate, finishing up the cleanup on the tariff. I agree with that. I don't know that I would characterize it as a cleanup. I think it's a supplement to. Fair enough. With respect, I believe it is a supplement to the 205 process, right? And that's what happens is the. So you bear the burden of proof. That is absolutely right. For the annual update process, when the inputs are provided, they're posted publicly. If a challenge is raised, the burden then falls on the utility to justify the costs that have been challenged by. You bear the burden of justifying the formula on the front end, the inputs on the backend, that's all 205. That's correct. They can challenge under 206. They can make the fair and just argument for under 206. We're going outside the refund period. So this is really all about who's going to bear the burden. In part, that's, that's exactly right. It is about who's going to bear the burden of proven. If you think about the challenge process and I know I'm out of time, but if we have questions, we'll. Okay. So what I just want to say to that, if you think about the way the challenge process works, it's, it's the way the formula rate process, once the challenge process is complete, no different than a, than any, than a 205 case, right? Once the commission approves a rate following the section 205 of the federal power act, it determines that rate is just reasonable and it stays in place. And the only way to challenge that is under section. The same concept logic would apply to the finality. And are these invariably separate proceedings under 205 versus 206? Like you can't argue 205 and in the alternative I'm challenging under 206 in one case, is that correct? I, you could, I guess you could, you could try to raise a challenge under 206. It would, it would, you would bear the burden if you were going to raise 206 challenges. So if you filed one pleading, raising a formal challenge and you filed a complaint on top of that, you would bear the burden. So it would be a different type of pleading. You'd have to have more evidence pending upon what the issues are. So practically speaking, you wouldn't do it in one pleading because it's different, different standards, et cetera. I would see, maybe you could, you know, you know, it's possible. Thank you. Thank you very much. Thank you. Back up. The podium is getting a workout this morning. I'd like to address two points. First of all, the citation to the MISO cases. As we explained in fair amount of detail in our brief, the case that has been cited to you is a case on the inferiority. What was the issue that was before FERC on rehearing? Customers did raise the backward error correction issue in the earlier case, but FERC didn't decide it. FERC instead decided to, quote, retain the requirement of the interest party to submit an informal challenge, that would be a preliminary challenge in the case protocol, in order to be raised any issue of a formal challenge. And then in paragraph 35, FERC summarized that argument and then agreed with it. So the claim that this has already been decided just isn't true. It's a new issue in this court in this particular instance. Now, section 5C, which actually applies to the full costs issue. Whatever the limitations there might be on customers as to what they, what challenges they can bring, there's also a protocol, section 5F, obligation, part of utility, to justify its particular cost items. They can't do that. Those cost items are not used and useful. Also an independent FERC obligation under section 205 to make sure the rates are just and reasonable. FERC can't do that. The costs are not used and useful. Thank you, counsel. The case is submitted.
judges: Katsas, Childs, Pan